Case number 23-1792 Jones-Stormo v. State National Insurance Company. At this time, would counsel for the appellant, Stormo, please introduce themselves on the record to begin. Good afternoon, Your Honor. My name is Zaheer Semih. I represent the appellant, Jones-Stormo. May I have two minutes for rebuttal? You may. The district court made at least three errors of law below. First, in its JNOB decision, it wrongly held that prejudice was irrelevant to notice requirements in claims made insurance policies. Second, it granted summary judgment on Ms. Stormo's 93A claim for unfair and deceptive practices in insurance based on the erroneous premise that the insurer had made a plausible interpretation of its policy. And third, on summary judgment, it failed to draw all inferences in favor of Stormo instead of the State National. As to the first error, under Massachusetts Notice Prejudice Rule, an insurance company cannot deny coverage for a belated notice of a claim unless it caused prejudice to the insurer. There's no denying that the SJC's decision in 1990 in the case of Chaz T. Main substantially narrowed the application of that rule. And just to be clear, that rule is a statute. That rule is a statute. It's codified in the statute, Your Honor. There's no question that Chaz T. Main substantially narrowed its application in claims made policies. But reports of the rule's death, greatly exaggerated. When you look at the JNOB decision here, at the bottom of page 5, which is at addendum 17, the district court stated that the Notice Prejudice Rule does not apply to claims made policies with specific notice requirements. A few pages later, on page 8, which is at addendum 18, it quoted Chaz T. Main as stating that the Notice Prejudice Rule applies only to the as-soon-as-practicable type of notice and not the within-the-policy-year type of reporting requirement. You cannot reconcile the JNOB decision with the SJC's pronouncement in Chaz T. Main. And the SJC is the expositor of Massachusetts law. But in Tanofsky, didn't they say that a prompt notice claim was the equivalent of the claims made traditional notice requirement? Tanofsky was a case where the policyholder learned of the claim within the policy year and then waited, I think, almost a year and a half after the end of the policy to report the claim. And the policy in that case, when you actually examine the language of the policy, it contained only one notice requirement, and that was a prompt written notice requirement. So the SJC and Tanofsky held that, well, of course, if you don't report the claim within the policy year, you learned of it within the policy year and you don't report it until a year and a half after the policy ends, it can't possibly be prompt written notice. And it required no proof of prejudice, despite the fact that it did not have a notice requirement that said within the policy year or 60 days thereafter. It equated prompt notice with that. I don't think it equated the prompt written, well, let me put it this way. It had the language prompt written notice in the policy. I don't think the SJC equated that language as equivalent to the, within the policy year type of requirement in every single policy. Because you can't just focus on the language of the policy and the words, you have to actually focus on the concept and the facts. Because the two types of requirements serve... There's no way to read prompt notice in this policy to mean what prompt notice meant in Tanofsky, isn't that right? Say that again, Your Honor. There's no way to read prompt notice in this policy to mean what prompt notice was construed to mean in Tanofsky. That's correct. Because there's a separate provision of the policy that does what the prompt notice was construed to do in Tanofsky, so it would be completely redundant if prompt notice meant that. That's correct, Your Honor. But your argument is the fact phrase was impossible to comply with, leaving only the prompt notice, which is the argument you advance. That's right. This particular policy, you can't treat the different types of notice requirements the same, and this one had two explicit notice provisions. The as soon as practical or prompt written notice condition serves the purpose of the insurer being able to have adequate time to investigate the claim. The within the policy year type of requirement, as the SJC stated, serves a very different purpose. It's unique only to claims made policy. And the notice here was not outside the policy period, correct? It was not, and the reason for that is in this particular policy, there was a provision that multiple related claims would be treated in a special way. They would be treated as a single claim, and subsequent later claims would be considered made at the same time as the earliest claim. So on the facts of this case, we had two claims against Mr. Clark, the policyholder. We had a claim by a company called KGM in 2010, and then we had Ms. Stormo's claim in 2014. Under the provisions of the policy, the KGM claim and the Stormo claim are related. So the Stormo claim made in 2014 is considered made in 2010. That's what brings a 2014 claim within the scope of the 2010 policy. So just to make the point, if we construed prompt notice in this policy to mean what prompt notice was construed to mean in Tanofsky, there would be no breach at all? Well, no, I think it's actually the opposite of that. No, you don't want to say that. Definitely don't want to say that, Your Honor. If we construed prompt notice in this policy to have the same meaning prompt notice in the policy in Tanofsky was given, there wouldn't even have been a breach because the notice was given during the policy period. I think I'm a little confused. I don't follow you. So in Tanofsky, the prompt written notice language says you have to give it within 60 days of the policy period. Right, and that's really... If we plug that into this policy, the notice here was given within 60 days of the policy, correct? Yes. How is that? It was given four years. No, because of the related. It's not outside the policy period because it's treated as made at the time of the first claim, which is within the policy period. Exactly. Tanofsky had no situation where... The prompt written notice requirement that Jasmaine says is still subject to the prejudice rule. Correct, and it's impossible for the prompt written notice condition in this policy to be construed any other way because it is impossible for a 2014 claim to be reported in 2010. So that only leaves one choice. It can't be within the policy requirement. It has to be as soon as... Let me ask you this. When did the policy period end? So I believe the policy ran from March 16, 2010 to March 16, 2011, and the KGM claim, if that's your next question, when was that reported? That was reported sometime in 2010, so well within the policy period. So the KGM claim was given notice of within the policy period, and the latter claim was deemed to have been made, the claim made within the policy period. But notice of that latter claim was not given until well after expiration of the policy period. Correct. So the first thing you have to determine is when the claim was made. If the claim was not made or considered made within the policy period, there's no coverage. You're out. Once you determine that the claim is made during the policy period, then you have to ask what notice requirement applies. And in this case, it's only the prompt written notice as soon as it's given outside the policy period. But you say it's still okay, because it would be impossible to have given a notice within the policy period. Correct. Otherwise, the whole provision about subsequent related claims would be... So we're dealing with a notice that's given outside the policy period. The argument is that the test is prompt notice. And so we have to decide whether that prompt notice requirement should be read as if it said as soon as practicable, and therefore turned a claims made policy notice requirement into a non-prejudice rule. The question is, does the notice prejudice rule apply to the prompt written notice or as soon as practicable type? Isn't there a separate non-prompt notice provision for giving notice within the policy period in this policy? Yes. And they're not relying on that, because they concede it doesn't apply. They have never relied on that as a defense. And the reason I assume is because they concede it doesn't apply for the very reason you gave, which is the relatedness part of the policy makes that provision non-applicable when you're dealing with a related claim that was related to a claim that was made within the policy period. Correct, Your Honor. Yes. So given that, they're themselves treating the prompt notice here to mean not what Tanofsky construed it to mean, but to mean reasonably practicable. I agree with everything you said, Your Honor. May I agree? I know there's another decision that we're appealing, which is the summary judgment decision, and I know I have to reserve. Can I just ask you, all that we're saying here, we've got our decision in the Harvard case, which doesn't adopt your position, by your own admission at most, just maybe doesn't address it. It doesn't address it. Tanofsky, which doesn't address it. Correct. Chasmaine, which doesn't address it. I think it does address it. Well, it didn't have occasion to address this particular question. A statute which broadly has a rule that you have to show prejudice for everything that we know sometimes doesn't in the claims made context. So given all that, why wouldn't, at a minimum, the appropriate thing for us to do if we were going to do anything, would be to certify the SJC to have them answer the question? I think if you look at the language of Chasmaine, it's very clear. It says explicitly that the notice requirement, the notice prejudice rule, applies only to the, excuse me, only to the as soon as practicable requirement, and not within the policy requirement. They couldn't have stated it more clearly. The reason why this issue has not come up, Your Honor, is because all the cases decided by this court, by the U.S. District of Massachusetts, and by the state appellate courts, none of them actually address this precise issue, because the typical fact pattern in the claims made policy is the policyholder doesn't give notice six months, twelve months, even 18 months, after the policy ends. None of them, so all of them have to do, deal only with the policy. And if I understand it, you say the policy purpose behind treating that as a condition precedent and not construing the statute to require showing a prejudice is for the sake of how a claims made policy works, that they can then figure out the rates, because they get it within the right period of time. Through its relatedness provision, because it caps the liability for the second claim at the time the first one's made. So it's not going to affect any rate setting. That's the idea? That is the idea, and therefore the right way to think about it is it's no different in function from a typical as soon as practical, or whatever reasonably practical, because at that instance you're not trying to do it for the sake of rate setting. You're doing it for the sake of ensuring that you can have an effective investigation. And that was the point of the statute to say, well, if that's the goal, show us it really affected the investigation. Yes, and at the trial in this matter, the insurance company's own representative state testified about this particular condition in the policy, and he said, testified that, yes, the purpose of that is so the insurance company can get involved soon enough to hire experts and mount a defense. May I briefly just address the 93A aspect of the decision? So the reason why the summary judgment was erroneous is it rested on the premise that state nationals disclaimer was based on a plausible interpretation of its policy, specifically the prior knowledge exclusion. That premise was incorrect. The district court later recognized it was incorrect and explicitly rejected the reading of that provision that state national had advanced. And when it instructed the jury on the meaning of that provision, it did so in a manner that also rejected state nationals reading of it, because state nationals reading was simply implausible. It ignored part of the language or it read it illogically. This court and the state appellate courts have held that an implausible reading... Just walk me through how you're reading it. So there's the first sentence, and I believe this is in the addendum, there's the first sentence which states that if the, I don't want to misread it because it is a little confusing. It says that claims are excluded. This is on the last page of the addendum, 24. If the insured at or before the effective date knew or could have reasonably foreseen that such wrongful at might be expected to be the basis of a claim. So basically it's saying in that sentence, if the insured knew of a claim or could have reasonably foreseen a claim prior to the start of the policy, and that's key, prior to the start of the policy, we're not covering it. However, then you have to go to the second sentence, which substantially narrows that previous sentence, which says the paragraph does not apply to any insured who, one, either had no knowledge or, two, could not have reasonably foreseen, et cetera, et cetera, a claim. So what sentence two is saying logically is that, look, this exclusion does not apply. In other words, there's coverage. I just don't quite see how your reading works, just grammatically. So the way I read it is the exclusion does not apply if you had no knowledge of? Of what? Of a claim. It doesn't repeat the word claim, but no knowledge of or could not have reasonably foreseen that any such wrongful act might be expected to be the basis of a claim. So you either have to have knowledge of a claim or reasonably foresee a claim in order for the exclusion to apply. So you have the insurance company, in other words, to deny coverage, they need to prove both of those things. Why? Why don't they have to just write either or? Because when you say not X or Y, logically that's equivalent to not X and not Y. But how would it work if you had knowledge of a claim? Would you not reasonably foresee the basis for a claim? I would agree with you there, Your Honor, because we consider knowledge a higher level of cognitive awareness. So doesn't that suggest that's not a good way to read the provision? That may be a better question to ask the insurance company. Why wouldn't you just say that that's just so absurd to read it that way, you could just read it naturally the other way? Say that again? Why wouldn't you just say that's such an absurd way to read it because it renders almost all of it redundant, that it would just make a lot more sense to read it the way that hurts you? I mean, I know you wouldn't want it to be read the way it hurts you, but I just don't see why grammatically you would read it the way that helps you if the result of that is as you would concede to render completely redundant half a second sentence. It's completely redundant, Your Honor. First of all, knowledge, the knowledge requirement is necessary. Knowledge of a claim? Knowledge of a claim. Could I have knowledge of a claim and not have a reasonable basis for thinking there's a claim? Okay. So in that case, you know, the second part of that may be redundant. I don't know. I'm saying if it really, I think it is redundant on your reading, and then that makes me think it's not a very good reading. Well, the opposite reading is actually illogical. So if you have to choose between two... What's illogical about it? It just means I read it for what it says or rather than an. Well, see, it says the exclusion, in other words, this paragraph B does not apply to any assured who had no knowledge of a claim. So if I had no knowledge, it doesn't apply? Correct. It also doesn't apply if I could not have reasonably foreseen, even if I didn't have the knowledge. What's wrong with that? But that means that the insurance company, that means there's no, that means the exclusion does not apply. That means there is coverage. And you're saying this is so clear it's a 93A violation not to agree with you. It's the insurance, if there's any, if there's any unclarity, it certainly cannot be read by the insurance company in a self-serving way. That is illogical and implausible. It is implausible. The district court recognized that. Is the only way for it to be read in the way you need it to be read to treat the second part of that sentence as redundant? I'm not necessarily sure it is redundant. It may be. I mean, I would, you know, I think knowledge is certainly normally a higher level of cognitive awareness than, you know, could not have been able to reasonably foresee. But I'm not going to sit here and say I can envision every possible circumstances where those might be, you know, they're always the same in every universe and every possible sort of circumstances. I mean, I just cannot say that. Typically, yes. But what I think it clearly states is the insurance company needs to prove knowledge of a claim prior to the start of the policy. That can be that. That's absolutely the only logically correct reading of the exclusion. And the district court agreed after examining the language, looking at all, considering all the arguments. Once you take away. You're saying he agreed in the jury instruction he gave when he used the word and. Yes. Is there any more explicit instance in which the district court adopts this reading? The record appendix page. In the jury charge conference, which is at pages 1201 through 1204. He essentially says the district court says. The exclusion does not apply to any insured who had knowledge of or this. So you have to prove both. Again, your client draft speaking to the insurance company, your client drafted. It's an exclusion. Isn't that the way this is supposed to work? If you want to exclude coverage, you have to be clear. And this is very far from clear. So the district court explicitly considered how to construe this language and found it to be implausible and instructed the jury accordingly. Once you take away that premise that their disclaimer was based on a plausible reading of the length of the insurance policy, the summary judgment decision cannot stand. There's there's decisions from this court, as well as the state appellate court, saying that an implausible or strained or self-serving reading of a policy will support a 93A violation. The other reason why the summary judgment decision on the 93A claim was an error was because it failed to draw all reasonable inferences in favor of Ms. Stormo when deciding that State National conducted a reasonable investigation of the claim. So one of the reasons that the summary judgment decision was wrong is if there are disputes of fact as to whether an exclusion applied, then that would prove as a matter of law that an exclusion applied. It may not ultimately have the duty to indemnify a judgment if a judgment is later entered, but if there's any possibility, and this is clearly established insurance law, that the claim might be covered, it must defend. Now, if it doesn't think there's coverage or it thinks it can prove there's no coverage, it can file a declaratory judgment action and seek that judicial determination. But until it does that and gets a court judgment saying there's no coverage, it has to defend. What the district court did is it thought that disputes of material fact as to whether the exclusion applied also created a dispute of material fact as to whether there was a duty to defend. That's not how it works under the insurance law. And can I just understand practically speaking how that would play out in this particular case because it's an unusual posture. If they had defended, it's possible that the plaintiff would have gotten less. Yes. But you're trying to recover on behalf of the plaintiff for the higher liability amount that's a consequence of them not defending. So I find there's a little bit of an unusual posture. Remember, Your Honor, my client has stepped into the shoes of the policyholder. Yes, I'm trying to figure out how that works because you've stepped into the shoes of a policyholder who's trying to, his interest would be to be paying less, but you're also trying to step into the shoes to get trouble on the higher amount. So how is that going to work practically if we ruled for you not on the 93A point about the duty to indemnify, but for you on the 93A as to the unreasonable with respect to the duty to defend? What would be the amount that would be the consequence of the duty to defend that you would trouble under the 93A? Does that make sense of the question? I think so. Well, the amount to trouble would be the totality of the judgments against the policyholder, Mr. Clark. If those are paid, guess what? He's just been relieved of a huge obligation to pay millions of dollars. And if the insurance company had stepped in in a timely fashion and defended and settled the case... Exactly. And if I may reserve the rest of my time for rebuttal. Thank you, Counsel. At this time, if Counsel for the appellee would please introduce himself on the record for his ten-minute response. Good afternoon, Your Honors. My name is Sean Mahoney. I represent the Appellee State National Insurance Company. And I'm here today to persuade you to affirm both of the district court's judgments that are at issue in this appeal. I'd like to start with the district court's grant of our judgment, notwithstanding the verdict on the notice prejudice issue. As a threshold matter, the district court correctly concluded that State National was entitled to judgment as a matter of law after trial because it was undisputed at trial that Peter Clark breached the policy's reporting requirements with respect to Stormwell's malpractice action. The key here is that no Massachusetts court, state or federal, has held that prejudice is required to disclaim coverage under a claims-made policy like this one. Seven cases. Has any court held that it's not required in a circumstance like this one? No, not in this with the related claims. No, that's correct. So why wouldn't we have the SJC weigh in on that? Our aim here is to get Massachusetts law right, not wrong. Absolutely, yes. I think there are two reasons for that. One is because, as this court recognized in Harvard College, the Supreme Court, Judicial Court of Massachusetts, it has distilled what the rule is. It said twice in Harvard College. One, quote, under Massachusetts law, then, an insurer is not required to show prejudice before denying coverage due to an insurer's failure to comply with the notice requirement of a claims-made policy. But the notice requirement there was within the policy period requirement, right? That is what was it. And that's not what you're relying on here. You specifically disclaimed that notice provision as the basis for the policy. We're not contending that a 2014 lawsuit had to be reported in 2010 within the policy year. We're not claiming that at all. So you're relying on a different type of notice breach than Harvard had to address. That implicates the same fundamental concerns that underlie... Well, that's what I'm trying to understand, because policy-wise, it seems like Chaz Main was drawing a distinction between those two types of concern. Chaz T. Main recognized that there are two different types of notice requirements in various insurance policies. And it explicitly says that the reasonably timely, what's the phrase, reasonably... As soon as practical? As soon as practical version of it appears in some claims-made policies. Yes, it did so, but it did not apply a different rule for prejudice than the claims-made policies. It didn't address that question. That's why I'm saying, why wouldn't we ask the one court we know that will get it right? Because the rule underlying that rationale is that claims-made policies ensure a fundamentally different risk than an occurrence policy. Remember in Chaz T. Main, the discussion of the difference between these two notice provisions was in the context of pointing out the fundamental difference between an occurrence policy on the one hand and a claims-made liability policy on the other. This is a claims-made policy. A claims-made policy ensures claims, not occurrences. As Chaz T. Main explained, and as other courts since, including this one, have recognized, the fundamental purpose, the insured risk in a claims-made policy is the claim itself. And the purpose of the notice requirements of a claims-made policy is to minimize the time between the insured event, which is the claim, and the payout under the policy. On these facts here, with a 14-month delay, that's undisputed in the trial court. No one disputes that Peter Clark waited 14 months before reporting that second. That's helpful to me, but I thought Chaz T. Main described it as enabling the rate setting. It is, and here's what I'm going to connect those two points right now. Here's why. You are correct. The fundamental point is rate setting. The point is to minimize. As soon as practicable, yes. The policy interest in learning as soon as possible, if it occurs within the policy period, is a different policy than having it occur within the policy period, because having it occur within the policy period facilitates the rate setting. It does, but in this case. But having it earlier in the policy or later in the policy period does not facilitate rate setting, or does it? Here's where I think it does, in this case with a 14-month delay. 14 months is longer than the original policy period. But I thought the whole point of the related thing was to protect the insurer from that problem by capping the liability at the amount of the first claim. So it doesn't have to worry about what the amount is and the other for rate setting purposes. Well, I think what it does, actually, is it protects, it does cap the liability, because it will bring related claims into the same policy year, so only one limit of liability applies. But what the state national, for example, like any insurer, did not bargain for was the policyholder, what Stormo is advocating here, which is to build in a second and virtually unbridled delay thereafter that would affect a rate setting later. The whole point of the rate setting was that we need to be able to predict exactly how much an injury is going to cost. That's why we want to compress the time between when the claim is made and when the payout is. That's what Chastity explained the difference was. At a 14-month delay, that's longer than the original policy period. Why I say that is because... where maybe when you set the rate, the cost of a settlement or judgment for a broken leg is $10,000. But maybe by 1990, it's $30,000, and that's the point of that. That can still happen within the cap of liability. If the liability limit was $1 million, we could still suffer because the value of what remains of the limit, even if a first claim was paid, is now greater because the policyholder was allowed to wait so long to report a second, fifth, or ninth claim to the insurer. That's why it's fundamentally different. That's why prompt written notice here implicates in this case with a 14-month delay that's longer than the 12-month period of the original policy. Are you suggesting that if it was like a 40-day delay, but it was an unjustified delay, that that would have to have prejudice? Well, it might be a different case if we had that. I'm just thinking the more you say this, it seems like there's a lot of nuanced policy things, which again leads me to think, why wouldn't we want the SJC to sort out some of this? Well, here, if they've already said that the fundamental purpose of this is to limit the time... Let me start this way. For the reasons I've said, this court should not vacate the district court's judgment. Because settled Massachusetts law... The district court's judgment is supported by the law of this circuit and Massachusetts law. Second, do you have to ask the SJC to answer this question? Harvard College has already recognized what the settled rule is. Stormo is inviting you to invent a new rule, which this court warned in Harvard College it is not the province of this court to do, because we follow what the Massachusetts SJC has prescribed. I guess one last thing that just is throwing me off is, the unusual thing about this is the rule we're talking about here is a statute. If I just read the statute on its face, it clearly covers this situation. I would disagree with that, and here's why. One, Chaz T. Maine said it doesn't. No, I understand that. I said on its face, if I didn't know Chaz T. Okay, I would still disagree, and here's why. The first sentence of that statute says it applies to liability insurance for bodily injury, death, property damage, or motor vehicles. This is a legal malpractice policy. That's at issue here. I don't think that statute, on its face, by its text... We're talking about Chapter 175, Section 112, I believe, which was discussed, just to be clear. So you're saying there's another provision here that exempts this from that statute altogether? You didn't argue that below. We argued that Chaz T. Maine and its line of cases supports, including this... I thought that was predicated on the understanding that the statute applied. I don't think the statute applies. If we're going to go there, I think the rationale Chaz T. Maine looked at that statute said Chaz T. Maine says it doesn't apply. If we're going to look at the text of the statute, I think the text of the statute doesn't necessarily apply to a legal malpractice claim, policy like this, under this kind of case. And I think that's actually also supported by last year's unpublished opinion, which we cited. It's the Meadowbrook case that recognizes that this statute does not necessarily apply to a context necessarily like this. So I think the point of it is this, that Massachusetts law at this point, as recognized in Harvard College, has never recognized prejudice as a showing under any claims-made policy whatsoever. The statute has been held not to apply to claims-made policies. No court in Massachusetts has adopted the rule that Stormo is advocating here. Therefore, the district court's judgment after trial on the motion for judgment notwithstanding the verdict is supported by current Massachusetts law. It's up to Massachusetts courts, obviously, the way the policy implications of that law. I also think that it should be pointed out that plaintiff's decision to bring this case in the district of Massachusetts rather than in a state court in Massachusetts undermines its ability to request that the district court or this court change Massachusetts law on this point to get the rule that they want, to add and graft on a prejudice requirement that in 30 years and seven cases, no state or federal court in Massachusetts has ever recognized. So with my time, I will address briefly the chapter 93A cause of action. A couple of points on that. I think we've covered that, but may I continue? Briefly. One, I think it should be noted that Stormo on appeal does not challenge, as I understand it, the district court's denial of Stormo's motion for summary judgment as to the breach of contract cause of action that she had, not the 93A cause of action. I think that undermines any argument that you can fault the district court for challenging the bad faith cause of action on the grounds that somehow our application of the prior knowledge exclusion wasn't plausible. In short, put simply, if Stormo doesn't challenge that there were material fact issues as to whether the prior knowledge exclusion applied to bar coverage, and we went to trial over that, that implicitly means it's a fairly debatable question, and that state, national, right or wrong, its construction was plausible, because we went to trial over that, and Stormo wants to keep the judgment that Stormo got at the end of that trial based on that. Second, briefly, under the standards the court is well aware, we only have to show, we only had to show at summary judgment that our construction of the prior knowledge exclusion was plausible. We don't have to show necessarily that we were right. There is support in the case law, as I'm sure the court is familiar with and we have discussed, that we may even be incorrect about that. I don't concede that we are for the reasons that we cited in our brief, but even if we were... Just briefly, before you sit down, can you just address the duty to defend point, because I take it what they're saying is you have to show that it's plausible that you think there's no possibility of a claim, because that's the duty to defend standard. Are you saying you satisfy that? Yes, we did. Yes, we did. Thank you, Your Honor. Thank you, counsel. There is a two-minute rebuttal. Please introduce yourself back on the record to begin. Here's to me for the appellant, Joan Stormo. Judge Barron, regarding your question as to whether the statute applies to this situation, by judicial decision, the SJC has stated that that codification of the notice of prejudice rule applies to all insurance policies in Massachusetts. So that's the Johnson Controls case decided by the SJC. It's worth noting in my reply brief I cite other courts, including the District Court of New Hampshire, which has construed Chaz T. Main to apply in a circumstance similar to this. The Texas Supreme Court, in a case quite similar, has held that the notice prejudice rule, and it cited and relied on Chaz T. Main at least five times in its decision, held that the notice prejudice rule applies to the as soon as practicable type of notice requirement. New Jersey goes the other way. I believe so. And we don't have the as soon as practicable notice requirement here. The prompt written notice condition is the as soon as practicable requirement. Tarofsky says to me the opposite. That's only if you focus, as State National does, just on the words of the policy, Your Honor. Tarofsky says Tarofsky dealt with a claims made policy, and the only notice requirement was for prompt written notice of the claim. And we are assuming here we have a claims made policy, and we're assuming the operative standard is prompt notice. So that sort of suggests to me we follow Tarofsky. Tarofsky had a fact situation completely different and a different policy. Well, what was different was on the issue of whether prompt notice was given. Certainly that's going to be fact sensitive, and it's hardly surprising that Tarofsky has, Tanofsky has different facts on whether notice was given. But there's no suggestion that there's any difference in the policy that wouldn't make its decision that the rule of no prejudice applies. Tanofsky construed the prompt written notice condition in that policy as if it were a policy. Within the policy year requirement. Because there was no within the policy year requirement in that policy. This policy has both. Correct. And so I take your point is you can't construe this prompt notice to mean within the year, because if you did, it would be entirely redundant. Correct. Don't wear a belt and suspenders when you walk around. Say that again, I'm sorry. Do you have an answer to that? Because suppose the idea is that if I'm following, even if it could theoretically mean within the year, they're not construing it to mean that. Because if it did mean that, for the same reason they're not relying on the actual within the year policy, they wouldn't be relying on this one because there would be no breach given the relatedness. That's the idea, right? So they're treating this as a reasonably practicable. They have and in their brief, that's how they construe it. They make no serious contention that it's not the as soon as practicable requirement. The notice prejudice rule is basically just another specific instance of the black letter contract law rule that only material breaches of a contract will excuse performance. The SJC has held that if there's a delay in notice under the as soon as practicable requirement and there's no prejudice, there might be a breach, but it's not a material breach. In all the Massachusetts federal courts, the Massachusetts appellate courts, the SJC, in every claims made case, including us, there's been no prejudice requirement. Because the only notice requirement at issue was the as soon as within the policy year type. And so we've had different policies, different facts, but in every case, as long as it's claims made. And then finally in Harvard, we just threw that distinction. Claims made versus occurrence, easy to apply rule, easy for people to understand, no need to get into excess complexity. Well, I think it was obvious in the Harvard case that the only requirement at issue was the within the policy requirement. Because Harvard had waited a year or more after the deadline to report its claim. So in the very next sentence after the SJC, I mean, this court said that something like the no harm, no foul principle applies, it specifically explained what the notice requirement meant. And it went on to say that the notice had to be given within the policy year. So other courts, including the treatises. I believe you asked for a two minute rebuttal, and I believe we're plowing over ground. That's already been well plowed. I'll conclude then by asking the court on the JNOV ruling to reverse and reinstate the jury verdict on the summary judgment decision to vacate the decision and remand for trial. Thank you.